UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                    Criminal No. 17-12(DSD/BRT)

United States of America,

        Plaintiff,

v.                                                      ORDER

Ian Scot Laurie,

        Defendant.


This matter is before the court upon the motion for a new trial and an extended briefing period by defendant Ian Scot Laurie. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court denies the motion.

## BACKGROUND

On October 26, 2017, a jury convicted Laurie of five counts of distribution of child pornography, and the court denied Laurie's motion for judgment of acquittal. Laurie now moves for a new trial on several grounds and requests an additional thirty days to fully brief the issues.

## DISCUSSION

### I. Standard of Review

On the motion of a defendant, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Cr. P. 33(a). The court has broad discretion

to grant a new trial, but should do so "only sparingly and with caution." United States v. Dodd, 391 F.3d 930, 934 (8th Cir. 2004).

**II.  Motion for New Trial**

    **A.  Prejudicial Effect of the Term "Child Pornography"**

Laurie first argues that the court erred in denying his motion to prohibit the use of the term "child pornography" at trial because it was unduly prejudicial and inflammatory. The court disagrees.

First, the term "child pornography" is a term that accurately describes the pictures and videos Laurie distributed. Second, prohibiting counsel and witnesses from using the term "child pornography" would have unnecessarily distracted the jurors from the evidence. Finally, Laurie provides no case law in support of his theory that the use of "child pornography" or similar terms is so prejudicial as to constitute error.[1] Even assuming that the use of the term "child pornography" is prejudicial, the evidence against Laurie was substantial, and the jury's verdict would have not likely changed even if the term were excluded. See United

---

[1] The Eighth Circuit has held it is reversible error when a court fails to take curative actions when a prosecutor makes prejudicial statements about the character of the defendant. See United States v. Cannon, 88 F.3d 1495, 1501-02 (8th Cir. 1996), abrogated on other grounds by Watson v. United States, 552 U.S. 74 (2007) (holding it was reversible error for the prosecutor to refer to defendants as "bad people"). Here, in contrast, the term "child pornography" colors the crimes at issue, but does not touch on Laurie's character.

States v. Bentley, 561 F.3d 803, 810-11 (8th Cir. 2009) ("We have ... declined to reverse the trial court even when terms such as 'monster,' 'sexual deviant,' and 'liar' are used, when the weight of the evidence was heavy and there is no reasonable probability that the verdict would have changed absent the comments ....") (citation and internal quotation marks omitted)(second omission in original). Therefore, a new trial is not warranted on this basis.

**B. Rachel Boggs's Testimony**

Laurie next argues that it was error to allow non-responsive testimony from government witness Rachel Boggs.[2] Laurie contends that Boggs's testimony was prejudicial because she referred to his prior arrest and alleged that he took a salacious and non-consensual photo of her. He further argues that the government's failure to adequately warn Boggs not to testify as to these matters amounts to prosecutorial misconduct.

The court notes that Laurie failed to object to the testimony and did not move to strike it from the record. Although the court agrees that Boggs's testimony could be deemed non-responsive, it does not believe that it unduly prejudiced the jury. First, the jury was instructed that "the defendant is not on trial for any act or any conduct not specifically charged in the indictment." ECF No. 100 at 7. The court believes that this instruction was sufficient to ensure that the jury did not improperly consider

---

[2] Rachel Boggs is Laurie's ex-wife and mother of his children.

3

Boggs's testimony about Laurie's past conduct.  Second, as already stated, the evidence against Laurie was substantial, and the jury's verdict likely would not have changed even in the absence of Boggs's challenged testimony.

Finally, the argument that this amounts to prosecutorial misconduct is without merit.  The government's counsel informed both the court and defense counsel that they had instructed Boggs not to refer to the defendant's prior arrest or the taking of non-consensual, salacious photos during direct examination.  Indeed, the testimony in question was elicited by defense counsel on cross-examination, not by the government.  There is no indication that the government failed to adequately curtail the testimony of their witness.  As a result, a new trial is not warranted on this basis.

### C. Failure to Disclose Alleged Conversations

Laurie also argues that the government improperly failed to disclose conversations that government agents had with Boggs.  He apparently learned of these conversations post-trial through his father who had spoken with Boggs.  Laurie alleges that government agents encouraged Boggs to obtain a restraining order against him and told her that it was possible that he would kill her children if she failed to do so.  He contends that these conversations may have influenced Boggs's testimony and would have been relevant to her credibility.

But Laurie had ample opportunity to cross-examine several government agents and Rachel Boggs. He could have asked about the content of the conversations between the agents and Boggs, but he did not. Even assuming the conversations did occur, the government did not have a duty to disclose the conversations because they are not exculpatory or impeachment evidence. Laurie does not contend that the conversations contradict or undermine any part of Boggs's testimony. Therefore, the conversations do not cast the trial in a different light or undermine confidence in the verdict. As a result, a new trial is not warranted on this basis either.

**D.   Admission of Gigatribe Chats**

Next, Laurie argues that the court erred in overruling his objection to the admission of Gigatribe chats in Exhibits 7, 13, 16, and 19.[3] Laurie argues that these exhibits lacked sufficient foundation and were inadmissable hearsay. The court disagrees. The government laid a sufficient foundation for each of the exhibits, and, as the court ruled at trial, the chats were not hearsay because they were not offered to prove the truth of the matter asserted. See Fed. R. Evid. 801. Again, a new trial is not warranted.

---

[3] In reviewing the record, it seems that defense counsel never objected to the admission of Exhibits 16 and 19. Regardless, the court did not err in admitting these exhibits.

5

**E.   Admission of Family Photographs**

Laurie also contends that the court erred in admitting exhibits 8, 12, 17, and 20, which were images of Laurie's family that were retrieved from the Gigatribe account. He argues that the images were salacious and prejudiced him. But the images were merely ordinary family photos; none of them were inappropriate, nor can they reasonably be viewed as prejudicial. Therefore, the court will not grant a new trial on this basis.

**F.   Publication of Child Pornography to the Jury**

Laurie next argues that it was prejudicial error for the government to play the beginning of an inadmissable and graphic video to the jury. Because Laurie does not provide more specificity, the court is unsure which video is the subject of his argument. In any case, even if some child pornography was shown to the jury, it was not prejudicial error because the government may show the jury child pornography, even of uncharged images and videos, in order to sustain its burden of proof. See <u>United States v. Becht</u>, 267 F.3d 767, 774 (8th Cir. 2001) (upholding the introduction of thirty-nine images of child pornography because of their probative value and the fact that the government took steps to limit their prejudicial effect). Here, the probative value of the child pornography shown to the jury was sufficient to outweigh any prejudicial effect, especially because the government redacted the images and limited the videos shown. As a result, a new trial

is not warranted.

### G.  Government's Refusal to Stipulate as to Content of Images

Relatedly, Laurie argues it was error for the government to decline his offer to stipulate that the images and videos charged in the indictment were child pornography.  But the government is not required to enter into such a stipulation, and Laurie provides no law to the contrary.  See United States v. Worthey, 716 F.3d 1107, 1114 (8th Cir. 2013) (concluding that it was not error to show child pornography to the jury, even though the defendant offered to stipulate that the videos were child pornography); United States v. McCourt, 468 F.3d 1088, 1092 (8th Cir. 2006) (upholding publication of child pornography to the jury over a defendant's offer to stipulate to their content).  Therefore, the court will not grant a new trial on this basis.

### H.  Insufficient Evidence

Laurie next argues that the evidence was insufficient to support the guilty verdict.  The court has already found that the evidence was more than sufficient to sustain a conviction, see ECF No. 99, and nothing presented here undermines that conclusion.

### I.  Failure to Prove Distribution

Laurie also contends that the government failed to meet its burden of proof concerning the distribution element of the offense. He argues that, at best, the evidence supports a conviction for aiding and abetting distribution of child pornography.  In support,

7

he relies on United States v. Durham, 618 F.3d 921 (8th Cir. 2010). In that case, the Eighth Circuit held that the mere existence of a peer-to-peer filing sharing network on the defendant's computer was insufficient to support a sentencing enhancement for distribution, because there was no evidence that the defendant uploaded the peer-to-peer file sharing service or that he knew how to use the program. Id. at 928-29. But Durham is distinguishable from the facts of this case. There is no evidence that Laurie did not know how to use Gigatribe, the peer-to-peer file sharing service that was found on his computer, nor is there evidence that he was not the one who installed Gigatribe. Rather, the evidence at trial supported a reasonable inference that Laurie knew Gigatribe was on his computer, knew how to upload images to Gigatribe, and knew how to share those images with others by providing them with a password. This is more than sufficient to show that Laurie's "use of the peer-to-peer-file-sharing network made the child pornography files in his shared folder available to be searched and downloaded by other [file-sharing] users." Durham, 618 F.3d at 928 (citation and internal quotation marks omitted) (emphasis and alteration in original); see also United States v. Collins, 642 F.3d 654, 656-57 (8th Cir. 2011) (affirming conviction for distribution of child pornography where there was sufficient evidence for the jury to reasonably infer that the defendant downloaded and installed the file-sharing service and that the defendant knew how to operate

computers).  As a result, a new trial is not warranted.

### J.   Sequestration of Laurie's Parents

Finally, Laurie argues that it was prosecutorial misconduct for the government to subpoena and sequester Laurie's parents.  He further contends that such conduct amounted to a violation of his Sixth Amendment right to a public trial.  The argument is frivolous.  First, Laurie did not object to the court's sequestration order.  Second, although the government ultimately did not call Laurie's parents as witnesses, it does not amount to misconduct.  The nature of a trial is unpredictable, and not knowing Laurie's defense, the government acted reasonably in subpoenaing Laurie's parents in the event they were called as witnesses.  Third, it was not error for the court to sequester Laurie's parents to avoid the possibility of tailoring their testimony to protect their son.  See United States v. Engelmann, 701 F.3d 874, 877 (8th Cir. 2012) (citation and internal quotation marks omitted) ("The purpose of sequestration is to prevent witnesses from tailoring their testimony to that of prior witnesses and to aid in detection of dishonesty.").  As a result, a new trial is not warranted on this basis.

The court does not believe that additional briefing will serve to clarify the issues.  Therefore, it also denies Laurie's motion for an additional thirty days to fully brief the issues.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendant's motion for a new trial and extended briefing period [ECF No. 101] is denied.

Dated: November 21, 2017

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court